and start with the first case, which is Zito v. United Technologies. Thank you. Thank you, Your Honor. Samuel Isakroff on behalf of the appellants. Your Honor, the ruling below in this case pushes the motion to dismiss beyond anything recognizable previously in this circuit. The complaint makes two fundamental allegations. One is that an ordinary consumer would be deceived by the marketing of these particular smoke detectors as being a home protection device, and secondly, that the device is not suitable for its ordinary and intended use. The district court rejected these allegations as being legally insufficient on two bases. One, the district court found that a smoke detector is sufficiently precise as a label to describe something that can detect some particles of smoke, although not the vast majority of home fire type. What's false or deceptive? It does detect smoke. There's no controversy about that. It detects smoke when it comes from things like white pine, cotton mattresses, things not ordinarily found in homes in this day and age. These are based on a technology that was devised 30 years ago when home construction was quite different. It hasn't been updated to meet the requirements of synthetic matters and things of that sort. And even the district court did not rely exclusively on that because the district court then went on to find repeatedly that any deception would be cured by the notice that was present on the box. And the box is this, Your Honor, and I hold it up. I've never done this before. I held up a prop on appeal. But this is the first tribunal that has ever seen this because there's no hearing below nothing. It wasn't presented to the district court? It's in the record, Your Honor, pictures of it, but we did not have a hearing below. The bottom part of that in the record, the photocopy, is completely illegible. It's not only illegible in the photocopy, it's illegible here. In order to read it, I can't even read it with my reading glasses on. I'd have to hold it like this and get good light. So was the district court just given a copy of it or was the district court provided with the box? There's no way to submit the box as an item on the complaint. The district court ruled on a motion to dismiss. It never looked at the box. It never looked at anything in this case. And it made the determination that this curative instruction, supposedly curative instruction on the bottom of a box on a product that sits on a shelf saying smoke detector, is all that is necessary to remove any doubt about the capacity of this particular product to detect most home fires. So the question then is how does this meet the Rule 12b-6 standards? And if you look at the opinion below, what you have is the district court saying, on Joint Appendix 45, that the notice on the bottom cures any misimpression. On 46, that the plaintiffs allege misrepresentation, and I quote, the court disagrees. On page 48, that the box clearly elucidates the warning that it does not detect many types of home fires. Even if one were to read this warning at the bottom, it doesn't say that. It doesn't tell the consumer what the relative risk is. And it is interesting that the Consumer Protection Board, the Federal Consumer Safety Protection Commission, says that it is necessary, if there is a cautionary note, to set it apart with language that says caution, warning, et cetera. On the bottom of the box, there is something that's set apart with the word warning, and it says, warning, removal of the alarm battery and disconnecting or loss of AC power will render this alarm inoperative. So even a consumer that is looking for a signal that there is something that may be amiss here would be directed to say, just make sure the power continues to be working. There is nothing labeled warning in the proper form. Now, how does the district court? Does it say that in some circumstances the photoelectric cell type alarms work better than this? No, it doesn't. And in other circumstances, this works better than, or when I say better, detects smoke sooner? No, it says that Kitty strongly recommends that both be used because of the different functions that they may have. That's what it says at the bottom in the very summary. Are you quoting the different functions that they have? Or does it say because one type detects smoke from certain origins sooner than the other? Yes, that is correct. And the other detects smoke sooner from other origins better than the first? That is correct, Your Honor. And we allege in our complaint that the majority of home fires, and specifically the majority of injuries and deaths from home fires are the result of one type, that is the large particle associated with synthetics and other materials that are commonly found in the house today. Is the intention that the warning is confusing or that it's not prominent enough? Both, Your Honor. Well, what's confusing?  Well, to help ensure maximum detention of the various types of fires that occur within the home. And it goes on and explains the differences between the two. And as a matter of law, can't a court decide whether that's confusing or not? I believe that a court under the Connecticut statute should not decide whether that's confusing or not. I think that the question whether it's confusing is one that Connecticut law places in the hands of the reasonable consumer. If the warning said today is November 17, 2016, and it was important to know the date, do you think that's confusing? No. Okay, so then there are instances in which the warning, as a matter of law, could be not confusing. Absolutely, Your Honor. Okay, so what is confusing about the sentence? Because the representation is that these are interchangeable technology that one serves as well as the other. Well, that's not true at all. That's not what this says. It says, Kitty strongly recommends both ionization and photoelectric smoke alarms be installed to help ensure maximum detection of various types of fires that can occur within the home. Ionization sensing alarms may detect invisible fire particles, parents, associated with fast-flaming fires, end of parents, sooner than photoelectric alarms. Photoelectric sensing alarms may detect visible fire particles, parents, associated with slow smoldering fires, end of parents, sooner than ionization alarms. It's crystal clear that they detect two different types of fire. Right, Your Honor. And if you accept the allegation and the complaint that, which one does at this point, that there is much greater risk in one category than in the other category, the implied equivalence between the technologies and the fact that they may be used It's the greater risk that most house fires or smoldering fires. That is exactly right, Your Honor. So they should encourage them, if they want to have at least some protection, to get the smoldering fire detector and let the fast-fire detector go. If your house is constructed of white pine and has largely cotton-filled fiber furniture in the house, then that is correct, Your Honor. Smoldering fires can become fast-burning fires, can't they? They can become after a long period of time. And the allegation, the description from the various consumer reports that we put in the complaint, describe how it's a question of how soon the detection takes place, Your Honor. Do you think the warning should have encouraged them to get the smoldering fire detector for, because the greater percentage of fires are smoldering fires, over the fast-burning fire month? That is the recommendation. Excuse me. I'm sorry, Your Honor. You told them to get both. It is preferable to have both than to have either. Exactly what this did. Yes, but I would maintain that the equivalence between them. But, Your Honor, we don't have to win on that point, on the point about whether the warning is wrong if it is not prominent enough, if it doesn't meet the standards of putting the reasonable consumer on notice. And that's, you know, and the only legal authority that the court below claimed was the Fink case. And the Fink case is nothing like this. There is no legal authority. We would recommend to this court to follow the Ninth Circuit from the Williams v. Gerber case, which says that it is not the responsibility of the consumer to go searching around the box when the representation is quite clear as to what the product does. Thank you, Your Honor. May it please the court, let me go right to the heart of this. The first holding of the court below was that there was no deception to begin with. And as we showed in our papers and as we argued directly, disclosure obligations of the kind that are reflected in the cases that Mr. Zakharoff just referred to, those disclosure obligations arise only as a corrective when there has been an affirmative misleading statement somewhere else. There is no such misleading statement because these are smoke alarms. Can I just ask a preliminary matter first? Do you agree with your colleague that the box was not part of the record before the district court and the district court didn't have an opportunity to look at it? Yes, the box was not part of the record, but the court looked at the version that he saw and he happened to say, I find it readable and understandable. But if the two of you agree that the box that Mr. Zakharoff brought to court today is in fact the box, do you, for this panel to have an opportunity to look at it, could we have it marked as an exhibit and submit it to the clerk? Do you have any objection to that? I suppose I don't. If the court would find it helpful to its decision, that's fine. The photocopies are very difficult to read. Yes, and I think what happens is over the sequence of time as you continue to Xerox something, it becomes less readable as it goes along. Yes, I completely understand. But we'll ask, as Mr. Zakharoff finishes his rebuttal, if he could hand the box to the clerk of court. Okay. Go ahead. Okay. In our view, the issue of the size of the, what is called the descriptive material, explanatory material, is actually not relevant. Because the box, the way for the court to look at this is if you walk into a store and there's gray paper packages that say, generic ionization smoke alarms. And if that, that is not untrue. It is clearly established. And by the way, it is established well more than the common understanding that it detects smoke. It detects smoke from both fires. And as you recall, it is purchased by 95% of the consuming public. It is also approved by the UL Laboratories, of course. And they describe this in the complaint. I'm not going out of the record. They describe how UL Laboratories has set up a smoldering and a flaming fire test. And all photoelectric and ionization alarms have to pass both tests. And they draw the lines on, of course, smoldering fires take longer to detect, unless they're smoldering, so that the numbers are there. And you'll see that there is a marginal difference between the performance of the two in those two particular circumstances. Mr. Zakharoff's, or the complaint, his characterization of the complaint, is that the photoelectronic technology will detect these smoldering fires more quickly. And that given the construction of homes today, that there are going to be a large percentage of such fires, so that this warning needs to be more prominently displayed. Well, it's not, number one, it is not a warning. Number two, it is simply a description. Number two, this is left up to, of course, it's in the building codes. It says, what is a smoke alarm? A smoke alarm in the Connecticut building codes and by Connecticut statutes is, of course, what is UL listed. That's what the statutes say. The building codes say it, the universal building codes. And you get your UL listing by passing this UL 217 standard described in the complaint. That provides your listing. That defines what a smoke alarm is. Now, they're saying UL testing is out of date. UL continually revises its testing and it is looking at its testing. But it is reconciling all of these issues, which is, what is the advantage of detecting smoldering fires versus false alarms? Bad detection, which causes people to shut off their alarms. What are those, how those balances are drawn? We're not here to decide under the CUTPA statute which is better. We are simply deciding CUTPA is limited to deceptive and unfair practices. And that doesn't mean we figure what is best for consumers to know, what is best for consumers to understand. Should this be displayed in the store when they walk into the store? And should they be given any more information? That's not what CUTPA deals with. It must be deceptive, and I'll talk about that in a moment, or unfair. Is it deceptive? No, it is not deceptive. It is not false, obviously. It is a smoke alarm. It is what the UL recognizes as a smoke alarm and what the Connecticut statutes recognize as a smoke alarm. And is what consumers recognize as a smoke alarm. Is it misleading? And that's where his cases come in. Where there's been a description such as the Langan case, which was the principal case they relied on. In the Langan case, there was a general description of the product. And the product was natural sunblock. And some of, and the manufacturer comes in and argues, some of the active ingredients are natural. So natural sunblock. The consumer looks at it and says, so that would be literally true. The argument would be that would be literally true in one interpretation. But the other interpretation of that same language is, would make it literally false. Is everything in this container, the sunblock, natural? So that's what the definition of misleading is. It has to be either false or misleading. Misleading means literally true, but false in another sense. There is nothing false on our packaging. And that is what is decisive for purposes of the cutbook claim. Mr. Zakharoff invoked this Consumer Product Safety Commission guidance document that talks about warnings. It is very much miscited here. The Consumer Product Safety Commission document, again, you click the link to it, you will see that is a document commissioned not by the commission, by the staff to do a little study, not about how you mark product packaging, but instructions. What you go inside the box on the detailed revelations. And it goes on for many pages about how you construct instructions inside the box, not the labeling. That's not a cutbook issue. And moreover, it makes clear that general descriptions of the product's performance is not the kind of stuff you warn about. It is a description of the product's performance and its relative merits. So we are not unhappy with our explanatory material. But in our view, you do not get to that kind of explanatory material. Mr. Zakharoff also mentioned, I think he was alluding to the merchantability claim, and when he said the second holding was suitable for its intended use. I think that's what he was alluding to. Merchantability, again, is actually quite easy to determine. The box is marked as an ionization smoke alarm. And having been marked as an ionization smoke alarm, does it perform as an ionization smoke alarm? And it certainly does. That is conceded on the face of the complaint. Now, we also raised the concept that the merchantability claim cannot be raised at this point because of privity. And I just wanted to expand on that because it's always been a subject that interested me in this sense. The merchantability claim that's raised here is statutory. It is from the UCC. They cite the statute. And the statute is in the sales article of the UCC, and it provides what the relationship is between the purchaser and the seller. And the purchaser and the seller, if he is dissatisfied with the product, he gets his money back from the seller. The seller is the retailer in these circumstances. So if you're relying on a statutory claim of merchantability, you're in a commercial context where privity is required. He says the law is going to change, and we're going to be expanding that concept of merchantability, and it's going to be getting different based on trends in the law. But the law as it exists in a statute right now is that privity is required. The district court didn't reach that question. This court didn't reach the question. Neither if we agreed with the district court. Yes, that is absolutely true. The basic concept of merchantability is satisfied here because this is exactly what it purports to be, which is an ionization smoke alarm. For interpreting what this statute is, I just want to go back to the last point, which is the debates about what should be allowed in the home, what should actually be in the building codes, what UL should approve, how they should describe it, how they should describe the instructions, whether both should be required in the building codes, which is the argument that Mr. Zakharoff is making, whether both should be in the building codes, buy them both. They cite one state that has actually done that by law. Those are all reasonable debates that could be played out in public policy institutions and regulatory bodies. But we are here looking at claims of fraud and claims under CUTPA, and that is a deception statute, and that's what our focus is here. Thank you, Your Honor. Your Honor, I come back to the fundamental question, which is how does this play out under Rule 12b-6? And the case law in this circuit says repeatedly, mostly they're in summary orders, but they always go back to whether there's reasonable arguments on either side, whether there's plausible arguments on either side. It is not the task of the district court to try to resolve those questions. So as Judge Wesley asked at the end of my opening, if there are clear-cut matters of fact that inform the legal decision, certainly the district court can handle those, and we take no issue with that. The question is, in fact, it was well-framed by counsel opposite. He makes a claim that this meets the state-of-the-art, that the UL approval is dispositive in this case because that shows that they have met every standard that has to be applied. That's a factual issue. Whether state-of-the-art, whether it does meet the state-of-the-art, whether state-of-the-art is the appropriate defense when the circuit... He also says there's nothing false or deceptive in any part of the packaging, and he points out, to the extent that you rely on the Consumer Product Safety Commission guidelines, those apply to instructional materials, not labeling, and that there's nothing in the complaint that plausibly alleges a deceptive misrepresentation. Well, the question under Connecticut law is whether a reasonable consumer faced with this would believe one or the other. That's why the Langan case is instructive, and I think that a reasonable consumer looking at this thinks that this is a fire alarm. I can only judge here from my own experience. I now have to go and rebuy fire alarms from my home because I had no idea that there were two kinds of fire alarms, and when counsel opposite was speaking, I was looking for where it does say ionization on here, and I did find it, a little word here that says source ionization. If I were a consumer, I would have no idea what that meant. I would rely on the fact that this says smoke alarm, and, in fact, that's the clear allegation in the complaint that was rejected as a matter of law. Mr. Zito said, I walked in. If you built a new home and you told your contractor to put smoke alarms in it, would, under Connecticut law, would you be able to get a certificate of occupancy if you had just ionization alarms in it? I don't know the answer to that yet.  It may be, and I don't dispute it. And if he's right about that, do you lose? No, no, Your Honor, because that's- The Connecticut standard for an acceptable smoke alarm does not set a standard with regard to misrepresentations? Your Honor, I don't believe it does, and for the following reason, if I may. I was trying to figure out why the district court did this, why it didn't hold a hearing, why it poured us out on this basis, and I came to the conclusion that the district court thought that the combination of state regulatory and the underwriter laboratories certification serves as a kind of preemption or primary jurisdiction in this case that divests the common law and the state statutory consumer protection law of all authority in this domain. I think that's an error as a matter of law. It may be that that establishes a defense. It may be that that establishes the state of the art. Maybe. But that's a factor, and courts, common law courts, often go beyond where state regulatory authorities have gone, have determined that a product or even state regulators haven't kept up with the changes in our lives, in our technology, and so forth. So there's nothing preclusive about either an industry group saying this is what we did 30 years ago, or even the state board. Thank you. Thank you both. Thank you. Well argued. I'll take the opportunity. Your Honor, may I? To make this under advisement to look at the box. We'll hand it up in one moment.